[Cite as *State v. Double*, 2021-Ohio-632.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 20CA0021-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AUSTIN M. DOUBLE | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 19CR0770 |

DECISION AND JOURNAL ENTRY

Dated: March 8, 2021

HENSAL, Judge.

{¶1} Austin Double appeals his convictions from the Medina County Court of Common Pleas. This Court reverses in part, and affirms in part.

I.

{¶2} Trooper Castillo with the Ohio State Highway Patrol pulled Mr. Double over for speeding on I-71 in Brunswick on March 8, 2019. She approached the passenger side of his Chevy Cavalier, and Mr. Double leaned over to roll down the passenger-side window. Trooper Castillo immediately smelled a strong odor of raw marijuana. After obtaining Mr. Double's license, registration, and proof of insurance, Trooper Castillo asked Mr. Double to step out of the vehicle, performed a pat-down search, read Mr. Double his *Miranda* rights, and put him in the backseat of her patrol car.

{¶3} Trooper Castillo then searched Mr. Double's vehicle for about twenty minutes. While doing so, she noticed a strong odor of marijuana coming from the center console. Using a

pocketknife, she opened the compartment of the center console that contained "the wires to the gear shift and whatnot[.]" Trooper Castillo testified that this compartment was neither created nor installed by Mr. Double, and that she knew it opened because she previously owned a Chevy Cavalier, and that compartment to her Chevy Cavalier contained the power window control panel. She testified that, although she used a pocketknife to open that compartment, she did not need to exert a lot of force because it "popped right off." During her cross-examination, Trooper Castillo acknowledged that she did not try to open the compartment with her fingers first before using her pocketknife.

{¶4} In the compartment, Trooper Castillo discovered a packet of tissue paper that contained wax, which she explained is a form of hashish, and a small container that contained more hashish. Trooper Castillo took these items to her patrol car and showed them to Mr. Double, who confirmed that it was about an ounce of hashish. Trooper Castillo released Mr. Double at the scene and submitted the substance for testing.

{¶5} Mr. Double was subsequently charged with one count of operating a vehicle with a hidden compartment used to transport a controlled substance in violation of Revised Code Section 2923.241(C), and one count of possession of hashish in violation of Section 2925.11(A), (C)(7)(c). He pleaded not guilty, and the matter proceeded to a jury trial.

{¶6} At trial, Lauren Ditto, a criminalist with the Ohio State Highway Patrol Crime Lab, testified that she performed two presumptive tests and one confirmatory test on the brown, waxy substance, which weighed 16.7914 grams. Ms. Ditto testified that the results of that testing indicated that the substance was hashish, which is essentially concentrated marijuana resin. Ms. Ditto testified that she did not test the level of THC (the psychoactive cannabinoid found in marijuana) present in the substance because the law in effect at the time did not require her to do

so and, according to her lab manual, a substance was considered hashish if it contained THC plus two additional cannabinoids. Here, she testified, the substance contained THC plus three additional cannabinoids, thus fitting the definition of hashish.

{¶7} Scott Goodin, a mechanical engineer who specializes in automotive design, testified on behalf of the defense. Mr. Goodin testified that he inspected Mr. Double's vehicle, and that it contained the original factory equipment without any modifications. Specific to the center console, he testified that he did not need any tools to open the compartment that Trooper Castillo searched, which contained the parking brake cables, shift linkage, and some wiring.

{¶8} The jury found Mr. Double guilty of both charges. He now appeals, raising five assignments of error for this Court's review. We will address his first assignment of error last.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FINDING OF GUILT OF OPERATING A VEHICLE WITH A HIDDEN COMPARTMENT USED TO TRANSPORT A CONTROLLED SUBSTANCE (R.C. 2923.241(C)(F)(4)) IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶9} In his second assignment of error, Mr. Double argues that his conviction for operating a vehicle with a hidden compartment used to transport a controlled substance is against the manifest weight and sufficiency of the evidence. It is well-established, however, that "a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18. Accordingly, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11; *see* Loc.R. 7(B)(7) of the Ninth District Court of Appeals ("Each assignment of error shall be separately discussed * * *."); App.R. 12(A)(2) ("The court

may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"). Nonetheless, we exercise our discretion to consider the merits of Mr. Double's combined assignment of error.

{¶10} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶11} On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶12} In support of his assignment of error, Mr. Double asserts that his vehicle contained original factory equipment that had not been modified or altered in any way. He, therefore, argues that his vehicle did not contain a hidden compartment for purposes of Section 2923.241(A)(2). For the reasons that follow, this Court agrees.

{¶13} Initially, we note that "[i]nterpretation of a statute is a question of law that we review de novo." *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, ¶ 20. Section 2923.241(C), under which Mr. Double was charged and convicted, provides that "[n]o person shall knowingly operate, possess, or use a vehicle with a hidden compartment with knowledge that the hidden compartment is used or intended to be used to facilitate the unlawful concealment or transportation of a controlled substance." A "[h]idden compartment" is defined as "a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure." R.C. 2923.241(A)(2). This includes, but is not limited to: "[f]alse, altered, or modified fuel tanks; [a]ny original factory equipment on a vehicle that has been modified to conceal, hide, or prevent the discovery of the modified equipment's contents; [and] [a]ny compartment, space, box, or other closed container that is added or attached to existing compartments, spaces, boxes, or closed containers integrated or attached to a vehicle." R.C. 2923.241(A)(2)(a), (b), and (c).

{¶14} The testimony at trial indicated that Mr. Double's Chevy Cavalier contained original factory equipment with no modifications or additions. Trooper Castillo acknowledged this, testifying that she previously owned a Chevy Cavalier, and that the compartment she found the substance in was neither created nor installed by Mr. Double. In denying Mr. Double's Criminal Rule 29 motion, the trial court rejected defense counsel's argument that, because Mr. Double's vehicle contained original factory equipment that had not been modified in any way, the State failed to establish that Mr. Double's vehicle contained a hidden compartment for purposes

of Section 2923.241. The trial court primarily relied upon *State v. Gomez*,[1] 5th Dist. Muskingum No. CT2018-0025, 2019-Ohio-481, for the proposition that a vehicle's original factory equipment can be considered a hidden compartment under the broad language of Section 2923.241. As explained below, however, *Gomez* is readily distinguishable from this case.

{¶15} In *Gomez*, a detective found drug residue inside a spare tire located in the cargo section of a Kia. *Gomez* at ¶ 16. The spare tire was not original to the Kia; the original spare tire had been removed and replaced with one that was not compatible with the Kia. This spare tire had "purposeful" cuts in it allowing access to the tire's interior, which is where the detective located the drug residue. *Id.* at ¶ 16. At the bench trial, the parties stipulated that this spare tire had been "altered[.]" *Id.* In light of this evidence, the trial court found Mr. Gomez guilty of one count of fabrication of a vehicle with a hidden compartment in violation of R.C. 2923.241(C). *Id.* at ¶ 2, 16.

{¶16} The Fifth District affirmed Mr. Gomez's conviction on appeal. *Id.* at ¶ 106. In doing so, the Fifth District indicated that a spare tire – even one that is not compatible with the vehicle it is found in – is original factory equipment *and* a hidden compartment under the broad language of Section 2923.241. *See id.* at ¶ 68 ("A spare tire clearly falls under the original factory equipment of a vehicle even though, as noted, the spare at issue was not the actual spare from the

---

[1] We note that the trial court also cited *State v. Moscoso*, 5th Dist. Muskingum No. CT2018-0012, 2018-Ohio-2877, and *State v. Buenrostro*, 5th Dist. Muskingum No. CT2018-0034, 2019-Ohio-694. Those cases stem from the same traffic stop and, thus, the same facts.

The trial court also cited *State v. Robinson*, 12th Dist. Madison No. CA2019-04-009, 2019-Ohio-5370. *Robinson* is readily distinguishable from this case because, in *Robinson*, there was no dispute that the defendant's vehicle had been modified to create a hidden compartment. *See id.* at ¶ 4, 41.

Kia in this case. The tire would further be considered a 'compartment, space, box or other closed container **added** to the [Kia].'") (Emphasis sic.) It then reiterated the trial court's findings below, including that the drugs were placed inside a tire that had been modified to conceal them, concluding that, "viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that [Mr.] Gomez knowingly operated, possessed, or used a vehicle with a hidden compartment with knowledge that the hidden compartment was used or intended to be used to facilitate that unlawful concealment or transportation of a controlled substance." *Id.* at ¶ 70. The concurring opinion expressed concern regarding such a broad interpretation of the statute, but concluded that, "as long as the spare tire meets the broader definition of "hidden container" [under Section 2923.241(A)(2)], it need not meet the listed examples set forth in R.C. 2923.241(A)(2)(a), (b), or (c)." *Id.* at ¶ 113 (Hoffman, J., concurring).

{¶17} While this Court believes that *Gomez* was correctly decided based upon the facts of that case, to the extent that *Gomez* stands for the proposition that a vehicle's original factory equipment, without modification, can be a "[h]idden compartment" under Section 2923.241, we disagree. Unlike in *Gomez*, Mr. Double did not modify or alter his vehicle in order to conceal drugs. Nor did he add or attach anything to his vehicle. He simply found what he presumably believed to be a good hiding place. That cannot be what Section 2923.241 seeks to criminalize. As the Ohio Supreme Court has stated:

> [w]hen interpreting a statute, a court's paramount concern is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. "[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation." *Slingluff v. Weaver,* 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. However, "[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson,* 77 Ohio St.3d 334, 336, 673 N.E.2d

1347 (1997). "A court must examine a statute in its entirety rather than focus on an isolated phrase to determine legislative intent." *Massillon City School Dist. Bd. of Edn. v. Massillon,* 104 Ohio St.3d 518, 2004-Ohio-6775, 820 N.E.2d 874, ¶ 37. *See also* R.C. 1.42.

*Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, ¶ 10.

{¶18} Here, under the trial court's interpretation of Section 2923.241, any enclosed area in a vehicle could be considered a hidden compartment simply because it is used to hide drugs. The plain language of the statute, however, requires more. While a "[h]idden compartment" is not limited to those items specifically listed in Section 2923.241(A)(2)(a), (b), and (c), each of those items reflects a modification and/or addition to the original factory equipment that "conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure." R.C. 2923.241(A)(2). Unlike the concurring opinion in *Gomez*, this Court does not believe that Section 2923.241(A)(2) should be read in insolation (i.e., without considering subsections (a), (b) and(c)) to mean that *any* "container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure" is a "[h]idden compartment" under the statute. *See Gomez* at ¶ 111-113 (Hoffman, J., concurring), quoting R.C. 2923.241(A)(2); *Horvath* at ¶ 10, quoting *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997) and *Massillon City Sch. Dist. Bd. of Edn. v. Massillon,* 104 Ohio St.3d 518, 2004-Ohio-6775, ¶ 37 (explaining that courts "cannot pick out one sentence and disassociate it from the context," and instead "must examine a statute in its entirety rather than focus on an isolated phrase[.]"). As that concurring opinion points out, such an interpretation of the statute would mean that any opaque container, such as a purse containing drugs, would be a hidden compartment under Section 2923.241(A)(2), regardless of where that container is located within the vehicle. *See Gomez* at ¶ 115 (Hoffman, J., concurring). That cannot be what the legislature intended to criminalize when it enacted Section 2923.241. *See Horvath* at ¶ 10. Having examined the statute in its entirety and

applied it to the facts of this case, we conclude that the State failed to present sufficient evidence indicating that Mr. Double's vehicle, which contained original factory equipment with no modifications or additions, contained a "[h]idden compartment" for purposes of Section 2923.241(A)(2). It, therefore, follows that Mr. Double's conviction under Section 2923.241(C) was not supported by sufficient evidence. Mr. Double's second assignment of error is sustained on that basis.

ASSIGNMENT OF ERROR III

> THE TRIAL COURT'S FINDING OF GUILT OF POSSESSION OF HASHISH (R.C. 2925.11(A)(C)) IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶19} In his third assignment of error, Mr. Double argues that his conviction for possession of hashish is against the manifest weight and sufficiency of the evidence. This Court applies the same manifest weight and sufficiency standards set forth in our analysis of Mr. Double's second assignment of error.

{¶20} Section 2925.11(A), (C)(7)(c), under which Mr. Double was charged and convicted, provides, in part, that no person shall knowingly possess hashish. "'Hashish' means the resin or a preparation of the resin contained in marihuana, whether in solid form or in a liquid concentrate, liquid extract, or liquid distillate form." R.C. 2925.01(Z).[2] In support of his assignment of error, Mr. Double challenges the testimony of the State's witness, Ms. Ditto, the criminalist with the Ohio State Highway Patrol Crime Lab. Mr. Double asserts that Ms. Ditto did not test the level of THC present within the sample she received, could not determine what part of the marijuana plant the substance came from, and did not examine the sample for glandular hairs

---

[2] Mr. Double's trial occurred in January 2020. Effective December 16, 2020, the definition of hashish was amended.

to differentiate the appearance and identification of the sample. Mr. Double also asserts that Trooper Castillo could not identify the substance, and that she thought marijuana and hashish smelled the same. He, therefore, argues that, based on the totality of the circumstances, a reasonable trier of fact could not have concluded that the substance obtained from his vehicle was hashish.

{¶21} In support of his argument, Mr. Double directs this Court to *State v. Hatton*, 5th District Delaware No. 10CAA010012, 2010-Ohio-5419. There, the appellant challenged his conviction for possession of hashish on the basis that the State failed to present sufficient evidence to identify the substance as hashish. *Id.* at ¶ 12. The Fifth District rejected the appellant's argument, noting that the State's forensic chemist testified that he had experience distinguishing hashish from marijuana, and that he performed two chemical tests on the substance. *Id.* at ¶ 15. The Fifth District acknowledged that the chemist did not test the level of THC in the substance, nor did he examine it under a microscope, which would have helped determine whether the substance was marijuana or hashish. *Id.* The Fifth District noted that the police officer who discovered the substance was unable to visually identify it as hashish, but testified that the "real sticky-type" substance was inconsistent with plain burnt marijuana residue. *Id.* at 14, ¶ 18. In light of the evidence presented, the Fifth District concluded that, viewing the evidence in a light most favorable to the State, a reasonable trier of fact could have found the appellant guilty of possession of hashish. *Id.* at ¶ 19.

{¶22} In response to Mr. Double's arguments, the State argues that Ms. Ditto was not required to test the level of THC present in the substance or examine the glandular hairs under a microscope, and that *Hatton* supports this. The State points to Ms. Ditto's testimony that the testing she performed was consistent with the standards within the scientific community at the

time. The State also argues that Mr. Double's argument ignores the fact that Trooper Castillo testified that she observed a very strong odor of raw marijuana, and that – when she presented Mr. Double with the substance while he was in the back of her patrol car – he confirmed that the substance was hashish.

{¶23} As the State points out, Ms. Ditto testified that she did not test the level of THC present in the substance because the law in effect at the time did not require her to do so and, according to her lab manual, a substance was considered hashish if it contained THC plus two additional cannabinoids. She testified that the substance found in Mr. Double's vehicle contained THC plus three additional cannabinoids, thus fitting the definition of hashish. She also testified that she has training in identifying controlled substances, that she has done so thousands of times, and that the substance found in Mr. Double's vehicle was brown and waxy with a pungent marijuana scent. Mr. Double did not present any competing testimony. To the extent that Mr. Double challenges Ms. Ditto's qualifications as an expert, he did not do so below, and has not argued plain error on appeal. *See State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 9-10 (addressing the appellant's challenge to the qualifications of an expert, and declining to construct a plain-error argument on the appellant's behalf). Having reviewed the record, this Court determines that the State presented sufficient evidence for purposes of establishing that the substance at issue was hashish according to the law in effect at the time of Mr. Double's trial. We further determine that this is not the "exceptional case in which the evidence weighs heavily against the conviction." *Croghan*, 2019-Ohio-3970, at ¶ 26. Accordingly, Mr. Double's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DENYING APPELLANT, AUSTIN DOUBLE,
CRIM.R. 29 MOTION AS THE STATE FAILED TO MEET THE BURDEN OF

PRODUCTION FOR THE CHARGE OF OPERATING A VEHICLE WITH A HIDDEN COMPARTMENT USED TO TRANSPORT A CONTROLLED SUBSTANCE AND POSSESSION OF HASHISH.

{¶24} In his fourth assignment of error, Mr. Double argues that the trial court erred when it denied his Criminal Rule 29 motion with respect to both charges. In support of his assignment of error, Mr. Double essentially asserts the same arguments presented in his second and third assignments of error relative to the sufficiency of the evidence. As the Ohio Supreme Court has stated, "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Consistent with this Court's resolution of Mr. Double's second and third assignments of error, we sustain Mr. Double's fourth assignment relative to his conviction under Section 2923.241(C) (operating a vehicle with a hidden compartment used to transport a controlled substance), and overrule his fourth assignment of error relative to his conviction under Section 2925.11(A)(C)(7)(c) (possession of hashish). Mr. Double's fourth assignment of error is sustained in part, and overruled in part.

ASSIGNMENT OF ERROR V

APPELLANT, AUSTIN DOUBLE, WAS DENIED HIS RIGHT TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

{¶25} In his fifth assignment of error, Mr. Double argues that his trial counsel rendered ineffective assistance. To prevail on a claim of ineffective assistance of counsel, Mr. Double must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687

(1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Double must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶26} In support of his assignment of error, Mr. Double argues that his counsel rendered ineffective assistance because she did not: (1) file a motion to suppress challenging the traffic stop and the search of his vehicle; and (2) hire an expert to test the substance found in his vehicle. We will address each argument in turn.

{¶27} Mr. Double argues that his trial counsel rendered ineffective assistance by not filing a motion to suppress relative to the traffic stop and subsequent search, which could have challenged the stop itself, as well as his consent to the search. We disagree.

{¶28} "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. As this Court has stated, "[c]ounsel's decision not to file a motion to suppress may be a matter of trial strategy, including counsel's reasonable assessment of whether such a motion is likely to succeed and recognition that filing a motion to suppress has risks." *State v. Kendall*, 9th Dist. Summit No. 25721, 2012-Ohio-1172, ¶ 7. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in

question. *Brown* at ¶ 65. "Furthermore, in order to satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there was a reasonable probability that the motion to suppress would have been granted. *Kendall* at ¶ 7.

{¶29} "It is well-established that a police officer who observes a traffic violation possesses reasonable suspicion to conduct an investigatory stop." *State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 15. This includes stopping a vehicle for speeding. *See, e.g.*, *State v. Hoder*, 9th Dist. Wayne No. 03CA0042, 2004-Ohio-3083, ¶ 15. Further, "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47 (2000), syllabus.

{¶30} Here, Trooper Castillo testified that she pulled Mr. Double over for speeding, and that she searched his vehicle because she smelled a very strong odor of raw marijuana coming from the inside of the vehicle. She testified that this was a probable-cause search, so she did not need to obtain Mr. Double's consent to search his vehicle. She also testified that she has training in identifying controlled substances. Having reviewed Mr. Double's assignment of error, we conclude that he has failed to demonstrate that there was a basis to suppress the evidence in question, and that there was a reasonable probability that the motion to suppress would have been granted. Mr. Double, therefore, has failed to establish that his trial counsel rendered ineffective assistance by not filing a motion to suppress relative to the traffic stop and subsequent vehicle search. We now turn to his argument regarding his counsel's failure to retain an expert.

{¶31} Mr. Double argues that his trial counsel rendered ineffective assistance because she did not retain an expert to confirm or dispute whether the substance found in his vehicle was hashish. As the Ohio Supreme Court has stated, "[t]he decision not to seek expert testimony is often tactical 'because such an expert might uncover evidence that further inculpates the

defendant.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 244, quoting *State v. Krzywkowski*, 8th Dist. Cuyahoga Nos. 83599, 83842, and 84056, 2004-Ohio-5966, ¶ 22. Additionally, it has recognized that "ineffective assistance does not occur when counsel decides to rely on cross-examination of the state's expert rather than calling a separate defense expert." *Thompson* at ¶ 244.

{¶32} Here, Mr. Double's trial counsel thoroughly cross-examined Ms. Ditto regarding the chemical testing she performed on the substance found in Mr. Double's vehicle. His trial counsel questioned Ms. Ditto regarding the specifics of the testing, her failure to test for the presence of THC in the substance, as well as her failure to identify which part of the marijuana plant the substance she tested came from. His argument on appeal assumes that a defense expert would have concluded that the substance found in his vehicle was not hashish. This speculation, however, is insufficient to establish ineffective assistance. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, ¶ 119, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 217 (stating that mere speculation "is insufficient to establish ineffective assistance."). We, therefore, reject Mr. Double's argument in this regard.

{¶33} In light of the foregoing, Mr. Double's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT AND ABUSED ITS DISCRETION IN CONVICTING AUSTIN DOUBLE OF OPERATING A MOTOR VEHICLE WITH A HIDDEN COMPARTMENT BECAUSE THE STATUTE IS UNCONSTITUTIONAL PER SE AND AS APPLIED TO AUSTIN DOUBLE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶34} In his first assignment of error, Mr. Double argues that Section 2923.241(C) is unconstitutional. It, however, is well-established that appellate courts should not reach

constitutional issues unless "absolutely necessary." *In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, ¶ 7, quoting *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 9. In light of our resolution of Mr. Double's second assignment of error (i.e., that his conviction under Section 2923.241 was not supported by sufficient evidence), it is not "absolutely necessary" for this Court to examine the constitutionality of Section 2923.241(C). We, therefore, decline to do so.

III.

{¶35} We decline to address the merits of Mr. Double's first assignment of error. Mr. Double's second assignment of error is sustained. Mr. Double's third and fifth assignments of error are overruled. Mr. Double's fourth assignment of error is overruled in part, and sustained in part. The judgment of the Medina County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded.

Judgment affirmed in part,<br>reversed in part,<br>and cause remanded.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.


_____
JENNIFER HENSAL
FOR THE COURT



CALLAHAN, P. J.
CARR, J.
CONCUR.


APPEARANCES:

JOCELYN STEFANCIN and KIMBERLY STOUT-SHERRER, Attorneys at Law, for Appellant.

S. FORREST THOMPSON, Prosecuring Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.